# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02905-RBJ

A-TAC GUNS GEAR UNIFORMS LLC and
ATAC ARMS,

      Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, BUREAU OF
ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,
DENVER COLORADO FIELD OFFICE, DIRECTOR
PAUL BROWN,

      Defendant.

## MOTION FOR SUMMARY JUDGMENT

Defendant, U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Denver Colorado Field Office, Director Paul Brown, ("ATF") respectfully files this Motion for Summary Judgment. Based on the administrative record,[1] ATF asks the Court to affirm ATF's revocation of the federal firearms license of, and imposition of fine against, A-Tac Guns Gear Uniform, LLC, doing business as A-TAC Arms ("A-Tac").

---

[1] ATF filed the administrative record at ECF Nos. 18 and 19. The record, which is contained in ECF Nos. 19-1 through 19-24 is numbered sequentially from USA_000001 through USA_000852. All references to the administrative records herein are to the USA_ number. A-Tac does not dispute the completeness of the record. *See* ECF No. 17 at ¶ 6(C) (setting April 24, 2020 as the deadline for submitting any motions to supplement or complete the administrative record).

## INTRODUCTION

A-TAC is a firearms manufacture and dealer in Aurora, Colorado. Timothy Taconi is the owner of A-TAC and the Responsible Person for the federal firearms license.

The Gun Control Act ("GCA" or "the Act") regulates the conduct and operations of federal firearms licensees ("FFLs"). 18 U.S.C. § 921 *et. seq.* Because each state also has its own state-specific regulations, one of the important requirements of the Act is that FFLs may not sell firearms directly to consumers out-of-state. ATF advised Mr. Taconi of this, and the other requirements of the Act, in February 2015, in processing A-Tac's application for its license.

In 2018, ATF learned from an informant that A-Tac was offering to sell firearms directly to customers at out-of-state gun shows. In September 2018, ATF agents approached Mr. Taconi at a gun show in Wisconsin, re-explained the prohibition on sales at out-of-state gun shows, and provided Mr. Taconi with a warning letter and one-page summary of the Act's requirements regarding gun shows.

Mr. Taconi continued to disregard the prohibition on out-of-state sales, and many other requirements of the Act. At an inspection three months later, ATF catalogued over 600 violations of the Act, falling into 16 different categories, including selling firearms out of state, failing to conduct background checks, and selling firearms to felons. Many of these violations occurred after the 2018 warning letter. Mr. Taconi explained to the ATF agent that he thought it was acceptable to handle the out-of-state sales through first transferring the firearms to himself in his personal capacity; and also that he tried to find other FFLs registered in these states to help him, but when he could not, he proceeded with the sales anyway.

The Administrative Director of the ATF Denver Field Office ("Director") provided A-Tac with a notice of its intent to revoke A-Tac's Federal firearms license and to impose a civil fine. At the subsequent administrative hearing, neither Mr. Taconi nor his counsel disputed that any of the violations occurred. Instead, they argued for leniency. Mr. Taconi advanced a number of excuses: that he did not believe the ATF agents who contacted him at the Wisconsin gun show in September of 2018 were real agents; that he received conflicting advice from other unnamed agents; that he did not actually read the warning letter or the summary of gun show regulations provided to him in September 2018; and that he had received some pressure from his wife to continue with out-of-state sales.

The Director concluded that the violations supported the revocation of A-Tac's federal firearms license and the imposition of a civil fine of $24,486.

The Court should affirm the Director's decision. Courts grant summary judgment to ATF when the administrative record provides evidence of a willful violation of the Act – which is defined to include deliberate indifference. As explained below, there is undisputed evidence from the administrative record that A-Tac conducted repeated willful violations of the Act.

## STANDARD OF REVIEW

The Gun Control Act provides for a *de novo* review in Federal District Court of ATF's final decision to revoke a federal firearms permit:

> If after a hearing . . . the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation.

3

18 U.S.C. § 923(f)(3). Although the plain language of this provision does not discuss the review of a civil fine, another provision of the Act indicates that fines, too, are reviewed and appealed through Section 923.[2] Accordingly, review of both ATF's revocation of A-Tac's firearms license and its imposition of a civil fine are properly before this Court.

In conducting a review of an ATF licensing decision, the district court has the discretion to limit its review to the administrative record, or to consider evidence outside of the administrative record, including conducting its own hearing: "In a proceeding conducted under this subsection, the court *may* consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing . . . " *Id.* (emphasis added). Because this standard is permissive, the reviewing trial court appropriately limits its review to the administrative record where that record contains sufficient evidence upon which to affirm ATF's decision. *Fairmont Cash Management, LLC v. James,* 858 F.3d 356, 361-62 (5th Cir. 2017) (the court may choose not to hold a hearing and may rely entirely on the administrative record); *Auguston v.* Holder, 728 F. Supp. 2d 1279, 1282 (D. N.M. 2010) ("Absent genuine issues of material fact, a court may properly grant summary judgment without an evidentiary hearing."); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004) ("'De novo review' may be confined to the administrative record . . . ").

---

[2] Two provisions of the Act permit ATF to impose a civil fine on FFLs: 18 U.S.C. § 922(t)(5) (for sales to prohibited persons), applied in this case, or 18 U.S.C. § 924(p) (regarding gun storage and safety). 18 U.S.C. § 924(p) specifies that review of that civil penalty is available under section 18 U.S.C. § 923(f). Although 18 U.S.C. § 922(t)(5) is silent as to the mechanism for review, ATF permits appeal from either fine provision under the procedures outlined in § 923(f). *see* Final Notice of Denial or Application, Revocation Suspension and/or Fine of Firearms License. (USA_000846).

In the present case, although reserving the right to later seek discovery and/or a hearing, A-Tac had agreed that the administrative record and summary judgment briefing may be sufficient for the Court's disposition of this case. ECF No. 17 at p 2, Section 5. As argued below, ATF asserts that the undisputed facts in the administrative record here are sufficient to establish at least one (indeed, hundreds) of willful violations of the Act and, accordingly, the Court need not consider any additional evidence.

The summary-judgment standard applied in ATF revocation cases is the well-established standard, with some additional considerations. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-movant cannot successfully survive summary judgment by establishing "[t]he mere existence of a scintilla of evidence in support." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In reviewing ATF's decision to revoke a federal firearms license on summary judgment, material factual disputes regarding some or even most of the ATF's grounds for the revocation do not preclude the court from entering summary judgment. Even a single willful violation of the Gun Control Act permits ATF to revoke a federal firearms license. *Fairmont Cash Management,* 858 F.3d at 362 ("A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe . . ."). As the Tenth Circuit explained in affirming summary judgment in ATF's favor: "[I]n reviewing a petition for judicial review of an ATF license revocation, the court may grant relief only if it 'decides that the Attorney General was not authorized to deny the application or to revoke the license.'" *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012) (quoting 18 U.S.C. § 923).

**UNDISPUTED FACTS**

<u>A-Tac is Advised of the Gun Control Act</u>

As part of the initial licensing process in 2015, A-Tac underwent an application inspection, whereby an ATF investigator[3] conducted an interview of the Responsible Person for A-Tac, Timothy Taconi. USA_000707, ln. 19 – USA_000709, ln. 19. In that meeting, the ATF investigator provided Mr. Taconi with a reference book of regulations known as ATF Publication 5300.4[4] as well as a high-level oral review of the regulations licensees must follow. USA_000709, ln. 21 – USA_711, ln. 20; USA_000019 – USA_000021. The review included the prohibitions on conducting sales outside of Colorado and selling certain firearms to out-of-state residents. *Id.* The ATF investigator also provided Mr. Taconi with a summary pamphlet on guidelines for sales at gun shows. USA_000710, ln. 25 – USA_000711, ln. 6.

Mr. Taconi signed and acknowledged both that ATF went over the Act with him, and that he "will be responsible for familiarizing myself with all of the laws and regulations governing my licensed firearms business." USA_000021. At the administrative hearing, Mr. Taconi admitted that he understood that he was going into a highly regulated industry, that he was provided with the regulation book and pamphlet, and that he was given the opportunity to ask any questions he may have had. USA_000804, lns. 7-18.

---

[3] ATF has both a criminal enforcement and a regulatory mission. ATF Special Agents are assigned to criminal matters and have the authority to arrest. ATF Investigators are assigned to regulatory matters, are unarmed, and have no authority to arrest.

[4] ATF Publication 5300.4, titled ATF Federal Firearms Regulations Reference Guide is available at https://www.atf.gov/file/11241/download.

A-Tac is Issued a Warning for Out-of-State Sales at Gun Shows

In 2018, ATF received a tip that A-Tac was selling firearms outside of Colorado through gun shows in Wisconsin. USA_000717, ln. 13 – USA_000718, ln. 1. On September 7, 2018, ATF Special Agent Jody Keeku, along with three other ATF personnel, approached Mr. Taconi as he arrived at a gun show in Racine, Wisconsin, and provided him a warning about selling firearms at out-of-state gun shows. USA_000025 – USA_000026; USA_718, ln. 22 – USA_720, ln. 11. Special Agent Keeku also provided Mr. Taconi the pamphlet summarizing the prohibition on out-of-state sales. USA_000028 – USA_000029; USA_ 000721, ln. 23 – USA_000722, ln. 9. The pamphlet, titled "Important Notice to FFLs and Other Participants at Gun Shows" contains a single-page summary of the Act's requirements pertaining to out-of-state gun shows. *Id.* It explains that, with the narrow exception of curio and relic firearms, "Federal firearms licensees ("FFLs" or "Dealers") may only sell firearms at gun shows within the State in which their licensed premises is located." USA_000723. When Mr. Taconi asked whether he could sell firearms that day at the Racine, Wisconsin gun show, the ATF agents told him that he could not. USA_000722, lns. 10-18.

An Inspection of A-Tac Reveals Hundreds of Gun Control Act Violations

Roughly three months later, on December 18, 2018, ATF conducted an inspection of A-Tac's place of business, which shares an address with Mr. Taconi's personal residence in Aurora, Colorado. USA_729, ln. 17 – USA_730, ln. 24. The report of violations from this audit contains over 600 individual violations in 16 different categories. USA_000031 – USA_000047; USA_000735, lns. 3-8. Several of the categories of violations arose from improper sales at out-of-state gun shows.

7

ATF Takes Administrative Action Against A-Tac

Of the sixteen categories of violations discovered in the inspection, ATF relied upon four types of violations in support of its decision to revoke A-Tac's license, and on one additional category for its decision to impose a civil fine. USA_000008 – USA_000009. On April 30, 2019, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine to A-Tac, outlining the five categories of violations and attaching appendices of documents supporting each violation. USA_000004 – USA_000010. A-Tac, through counsel, timely requested a hearing on the notice. USA_000012.

The Administrative Hearing

A hearing was conducted on July 8, 2019 before the Director, with A-Tac and ATF each represented by counsel. A certified transcript of the hearing is contained in the administrative record at USA_000700 – USA_000844. The exhibits entered into evidence in the hearing are contained in the administrative records at USA_000001 – USA_000699.

The hearing involved testimony and exhibits concerning the four categories of violations that formed the basis for ATF's revocation of A-Tac's license, and the category of violations that formed the basis of ATF's imposition of a civil penalty.

First, A-Tac sold firearms out of state. A-Tac sold firearms at 27 separate gun shows, resulting in the out-of-state sale of 56 firearms to 54 different out-of-state residents. USA_000735, ln. 16 – USA_000736, ln. 12.[5] Forty of these sales occurred after the September

---

[5] Each of the out-of-state sales is catalogued on the first two pages of the Report of Violations from the inspection. USA_000031 – USA_000032. Appendix 1 to the subsequent Notice to Revoke contains the documentation for each of the out-of-state sales. USA_000008. Appendix 1 was entered as Exhibit 9 at the administrative hearing. USA_000048 – USA_000261.

7, 2018 warning issued to Mr. Taconi described above. USA_000736, ln. 19 – USA_000737, ln. 6.

Second, A-Tac sold firearms without first conducting a background check. On 110 occasions, A-Tac failed to conduct a background check prior to transferring a firearm. USA_000743, ln. 23 – USA_000744, ln. 14.[6] Roughly half of those transfers were to Mr. Taconi himself, and the remaining 56 were to other purchasers. USA_000033-000034. Over 30 of these sales to other purchasers occurred after the September 7, 2018 warning letter. USA_000746, ln. 21 – USA_000747, ln. 1.

Third, A-Tac sold handguns to non-Colorado residents. A-Tac sold 45 handguns to 43 different non-Colorado residents during the audit period. USA_757, ln 23 – USA_000761, ln. 2.[7] Over 31 of these transfers occurred after the September 7, 2018 warning letter. USA_000758, lns. 22-25.

Fourth, A-Tac failed to complete and retain firearms transfer records. ATF discovered 59 occasions on which A-Tac failed to complete and maintain the firearms transaction record, known as a Form 4473. USA_000761, ln. 3 – USA_762, ln.24; USA_000035 – USA_000036; USA_000682 – USA_000699. Fifty-six of these missing forms relate to transfers of firearms

---

[6] Each of the sales without a background check is catalogued on pages three and four of the Report of Violations. USA_ 000033 – USA_000034. Appendix 2 to the Notice to Revoke contains the backup documentation for these violations. USA_000008. Appendix 2 was entered as Exhibit 10 at the administrative hearing. USA_0000261 – USA_484.

[7] Each sale of a handgun to a non-Colorado resident in catalogued on pages 4 and 5 of the Report of Violations. USA_000034 – USA_000035. Appendix 4 to the Notice to Revoke contains the backup documentation for these violations. USA_000008. Appendix 4 was entered as Exhibit 12 at the administrative hearing. USA_000511 – USA_000681.

from A-Tac to Mr. Taconi, and three of the missing forms related to transfers to third parties. *Id*.[8] The three sales to third parties without a Form 4473 occurred after the September 7, 2018 ATF warning letter. USA_000762, lns. 1-8.

ATF based its assessment of a civil penalty upon a fifth category of violations: sales of firearms to prohibited persons. On three occasions, A-Tac transferred firearms to a felon. At the time of these sales, the National Instant Criminal Background Check System ("NICS") was operational and, had A-Tac run the required check, NICS would have denied each felon's purchase as a prohibited person. USA_ 000749, ln. 10 – USA_757, ln.22.[9]

Mr. Taconi's Explanation

Mr. Taconi claims that he was not sure the Agent who approached him at the Wisconsin gun show, Agent Keeku, was a real ATF agent. USA_000805, ln 23 – USA_000806, ln 13.[10] Mr. Taconi did not follow up with ATF to verify Agent Keeku's identity. USA_000806, ln. 14 – USA_000807; USA_000815, lns. 6-21. With respect to the warning letter and pamphlet Agent Keeku handed to Mr. Taconi, Mr. Taconi testified that he looked at them, but did not "read read" them. USA_000807, lns 3-5. Mr. Taconi also asserts that he received conflicting information

---

[8] Each missing Form 4473 is catalogued on pages 5 and 6 of the Report of Violations. USA_000035 – USA_000036. Appendix 5 to the Notice to Revoke contains the backup documentation for these violations. USA_000009. Appendix 5 was entered as Exhibit 13 at the administrative hearing. USA_000682 – USA_000699.

[9] Each of these sales is catalogued on pages 2 of the Report of Violations. USA_000032. Appendix 3 to the Notice to Revoke contains the backup documentation for these violations. USA_000008. Appendix 3 was entered into evidence at the administrative hearing as Exhibit 11. USA_000485 – USA_000509.

[10] Special Agent Keeku showed Taconi her ATF badge, an accompanying investigator wore his ATF jacket, and the letter given to Taconi was on ATF letterhead signed by an ATF supervisor. USA_000718, ln. 20 – USA_000719, ln.18; USA_000025 – USA_000026.

from other ATF agents, but that he does not have a record of whom he spoke to or when. USA_000786, ln. 22 – USA_000787, ln. 12; USA_000805, ln 4 – USA_000807, ln. 16.

During the inspection, Mr. Taconi told ATF that he tried to find FFLs at the gun shows to assist him, but when he was not successful, he transferred the firearms anyway. (USA_000763, lns. 7-19; USA_000742, lns. 4-15). At the hearing, Mr. Taconi did not deny this, and suggested that he received some pressure from his wife to continue sales in this way and that his wife did not agree with the importance of certain requirements. USA_000811, ln. 21 – USA_000815, ln. 21; USA_000795, ln. 23 – USA_000799, ln. 16.

The Director's Decision

Following the hearing, the Director determined that there was evidence of willful violations supporting the revocation of A-Tac's federal firearms license. USA_00850-851. He concluded that, with the exception of the missing Form 4473s, any of the violations, alone, would have led the Director to revoke the license. USA_000852, ¶ 7. The Director also concluded that a civil fine of $24,486 should be assessed for the three transfers of firearms to convicted felons. *Id*., ¶¶ 6 and 8.

## ARGUMENT

The undisputed evidence in the administrative record supports both the Director's revocation of A-Tac's federal firearms license and the imposition of the civil fine.

### I.     The Record Supports the Revocation of the License

ATF may revoke a federal firearms license for any willful violation of the Gun Control Act. 18 U.S.C. 923(e) ("The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated

any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . ."). Because there is no *de minimus* exception to the Act, undisputed evidence of even one of these hundreds of violations requires summary judgment in ATF's favor. *Fairmont Cash Management,* 858 F.3d at 362.

   A. <u>Sales outside of Colorado and Sales to Non-Colorado residents</u>:

   Two of the four types of violations ATF relied upon to revoke A-Tac's license directly relate to A-Tac's sales at out-of-state gun shows. First, an FFL is not permitted to sell firearms at out-of-state gun shows. *See* 18 U.S.C. § 922(j) (an FFL may "conduct business temporarily at a location other than the location specified on the license if such temporary location is the location for a gun show . . . *and such location is in the State which is specified on the license*" (emphasis added)); 42 C.F.R. § 478.100(a)(1) ("A licensee may conduct business temporarily at a gun show or event defined in paragraph (b) if the gun show or event is located in the same State specified on the license."). Second, it is a separate violation for an FFL to sell a handgun to a resident from another state, regardless of where that sale takes place. 18 U.S.C. § 922(b)(3) (unlawful for an FFL to sell or deliver any firearm (other than a rifle or shotgun) to anyone "the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located"); 42 C.F.R. § 478.99 (same).

   As described above (at 8-9), A-Tac sold firearms at 27 separate gun shows, resulting in the out-of-state sale of 56 firearms to 54 different out-of-state residents. Forty of these sales occurred after the September 7, 2018 warning. These sales also resulted in the sale of 45 handguns to 43 different non-Colorado residents. *Supra,* at 9.

B.     Sales without Conducting Background Checks:

One of the important requirements of firearms dealers is that the FFL conduct a background check of every non-FFL purchaser of a firearm prior to transferring the firearm. 18 U.S.C. 922(t); 42 C.F.R. 478.102(a). As detailed above, (at 9) A-Tac violated this provision on 110 occasions. Mr. Taconi claims that he did not understand that he was required to conduct a background check on himself (USA_000748, ln. 18 – USA_000749, ln. 1), but 56 of these violations were transfers to third parties. USA_000033 – USA_000034.

C.     Completing and Retaining Sales Records

For each sale of a firearm, an FFL must generate and retain a Form 4473, which, among other items, documents the identifying information of the purchaser. 18 U.S.C. § 922(b)(5) and 923(g)(1)(A); 42 C.F.R. § 478.124(a). As detailed above (at 9-10), A-Tac failed to complete and maintain this form on 59 occasions. Fifty-six of these involved transfers to Mr. Taconi personally and three occasions involved transfers to third parties.

D.     A-Tac's Defenses to the Revocation Cannot Defeat Summary Judgment:

A-Tac does not deny that the violations established above occurred, but asserts that these violations were not "willful" and, that, in any event, ATF should have provided A-Tac a second chance. Neither of these arguments can defeat summary judgment here.

   *1. Willfulness*

Willfulness, under the Act, does not require intentional violation of the law. Instead, "plain indifference toward known legal obligations" is sufficient to meet the willfulness standard of the Gun Control Act. *Borchardt*, 684 F.3d at 1042-43. Willfulness may be inferred from circumstantial evidence. *Id.* at 1043. "Where a licensee receives official warning that his actions

13

violate the GCA and his record of compliance does not change . . . it is permissible to infer 'willfulness.'" *American Arms Intern. v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009). Further, even absent a warning, willfulness can be inferred. *Simpson v. Attorney General*, 913 F.3d 110, 116 (3d Cir. 2019) (in affirming summary judgment for ATF in a case in which ATF did not provide a warning, finding important that the FFL was trained on the Act's requirements and signed acknowledgments of those trainings); *CEW Properties, Inc. v. U.S. Dept. of Justice*, 2019 WL 2305154 (W.D. Okla. May 30, 2019) (appeal filed) ("While Petitioner was not warned of its violations prior to revocation, the law is clear that this is not required.").

As detailed above, ATF went over the rules and regulations with Mr. Taconi both in 2015 and in 2018 when it warned Mr. Taconi about his out-of-state gun show activity. In both instances, Mr. Taconi signed an acknowledgment that he received the information. USA_000021; USA_000026. While Mr. Taconi claims there was confusion because of contradictory information from unnamed agents whom Mr. Taconi claims he called, the written materials Mr. Taconi had in his possession were clear and consistent. The text of the applicable statutes and regulations in ATF Federal Firearms Regulations Reference Guide provided to Mr. Taconi is not ambiguous, and the one-page ATF gun show handout (USA_000022 – USA_23) is succinct and direct: "Federal firearms licensees ("FFLs" or "Dealers") may only sell firearms at gun shows within the State in which their licensed premises is located." Mr. Taconi's subsequent excuse that he did not "read read" (USA_000807, lns 3-5) the handout or warning letter is, at best, plain indifference.

There is also ample evidence that Mr. Taconi did understand that A-Tac could not sell firearms at out-of-state gun shows. He explained to the ATF agent at the inspection that he often

14

tried to find FFLs licensed in the location of the gun show to assist him, but that when he was unsuccessful, he went through with the sale anyway. USA_000742, lns. 4-15; USA_000763, lns. 7-19.

And there is nothing in the Act that would lend credence to A-Tac's claim on appeal that Mr. Taconi legitimately believed he could avoid some of these violations by first transferring the firearms to himself personally. *See* Amended Complaint (ECF No. 12) at ¶ 11 (excusing the failure of A-Tac to conduct background checks for 56 third-party sales as "the technical distinction between the licensee was A-Tac *vis a vie* Mr. Taconi was the responsible person, i.e. a separate person.") and ¶ 13 (in discussing the sales to non-Colorado residents, asserting that "Plaintiff thought that those firearms were from his personal collection and that he thought it was okay to transfer them to out-of-state residents without violating the law").

The Act is clear, however, that unless the individual owner keeps the firearm in his or her personal collection for a full year, any subsequent sale of the firearm is still attributable to the FFL. 18 U.S.C. § 923(c) ("If any firearm is so disposed of by a licensee within one year after its transfer from his business inventory into such licensee's personal collection or if such disposition or any other acquisition is made for the purpose of willfully evading the restrictions placed upon licensees by this chapter, then such firearm shall be deemed part of such licensee's business inventory.")[11]

---

[11] Mr. Taconi did not hold the firearms for a year before transferring them. *See* USA_000033 – USA_000034 (the sales from A-Tac to Mr. Taconi occurred between December 21, 2017 and June 19, 2018; the subsequent sales to third parties all occurred between February 4, 2018 and December 16, 2018).

15

The Act also imposes personal criminal liability for the work-around A-Tac appears to have employed. It is unlawful for a non-licensed person to act as a dealer and engage in anything other than "occasional sales." [12]  18 U.S.C. § 922(a)(1)(A); 18 U.SC. § 912(21)(C) Further, these issues were specifically addressed in the answers to the Questions, "How can a licensee maintain a personal collection of firearms?" and "May a licensee create a personal collection to avoid the recordkeeping and NICS background check requirements of the GCA" contained in firearms regulations guide provided to Mr. Taconi. ATF Federal Firearms Regulations Reference Guide at 202.[13]  Moreover, just as for FFLs, it also unlawful for a private individual to sell a firearm to a resident from another state. 18 U.S.C. § 922(a)(5). This prohibition was contained in the gun-show pamphlet ATF gave to Mr. Taconi (USA_000023). And the very form Mr. Taconi often used to document his "personal" transfers to third parties notes on the top of the form that the Act as allows personal transfers to "residents of his/her State." *See e.g.,* USA_000683.

In sum, Mr. Taconi's claimed belief that he could personally transfer the firearms at out-of-state gun shows also shows, at best, indifference to following the law.

  2. *Request for Leniency*

A-Tac also argues that it should receive additional chances before the revocation of its license. A-Tac claims that after the compliance inspection, it achieved "100% compliance" and that ATF should have offered A-Tac a "discretionary re-evaluation" rather than revoke A-Tac's

---

[12] Perhaps recognizing the prohibition of non-licensed individuals on conducting frequent sales, Mr. Taconi appeared to downplay the frequency of, and circumstances surrounding, his personal sales during his testimony at the hearing. USA_000808, lns. 1-19.

[13] Available at https://www.atf.gov/file/11241/download.

license.  ECF No. 12, ¶ 2.  There is no entitlement to a re-evaluation or any second chances in the Act, however.  And A-Tac was given a second chance.  When A-Tac was given a clear warning at the Wisconsin gun show in 2018, Mr. Taconi chose to downplay and discount it, and not even to read it.  Moreover, this Court's review is limited only to whether the Attorney General "'was not authorized . . . to revoke the license.'" 18 U.S.C. § 923(f)(3).  A-Tac's request for prosecutorial discretion to impose a lesser sanction is not reviewable.

**II.     The Record Supports the Imposition of a Civil Fine**

The Director considered a fifth category of violation in determining whether to impose a civil fine: transfer of a firearm to a prohibited person.  Among others, convicted felons may not possess firearms.  *See* 18 U.S.C. § 922(g)(1) (anyone who has been convicted of a crime punishable by imprisonment for a term exceeding one year may not possess a firearm).  ATF may impose a civil fine each time an FFL (1) knowingly transfers a firearm to another person (2) knowingly fails to conduct a NICS background check, and (3) at the time of the sale, the NICS was operating and would have identified the person as prohibited from receiving a firearm. 18 U.S.C. § 922(t)(5).[14]  The willful requirement discussed above does not apply to Section 922(t)(5).  *Bankston v. Then*, 615 F.3d 1364, 1368 (8th Cir. 2010) (in review of ATF's imposition of a civil fine for a violation of 18 U.S.C. § 922(t)(5), holding that "willful" does not apply to this section of the GCA; only a "knowing" failure to conduct a background check).

As outlined above (at 10), on three occasions, A-Tac transferred a firearm to a felon at a time when the background check system was working and would have indicated that these three

---

[14] The maximum per penalty fine under 18 U.S.C. § 922(t) has been adjusted for inflation.  28 C.F.R. § 85.5.

individuals were prohibited persons. Further, Mr. Taconi knew about the requirement to conduct background checks. USA_ 000020 – USA_000021 (advising Mr. Taconi about the NICS); USA_000748, ln. 18 – USA_000749, ln. 1 (claiming that he did not know he had to conduct a background check *on himself*; not that he misunderstood the requirement to conduct background checks on third parties). Based on these violations, the Director imposed a total civil fine of $24,486 for the three violations. (USA_000852).

A-Tac asserts that this was improper because 1) those felons lied on their Form 4473 by asserting that they were not prohibited persons, 2) there was some miscommunication among A-Tac's staff, and 3) Mr. Taconi offered to help recover the firearms sold to the felons. Petition at ¶ 12. These are not viable defenses. The Act requires background checks on all purchasers, regardless of whether they admit to being prohibited felons. 18 U.S.C. § 922(t); 42 C.F.R. § 478.102(a). And the actions of the employees of an FFL are attributable to that FFL. *Fairmont Cash Management*, 858 F.3d at 363; *Auguston*, 728 F. Supp. 2d at 1286. Finally, there is no provision of the Act that allows an FFL to cure a violation by later offering to recover firearms illegally transferred. As a result, the Act permits ATF to impose a fine for each of these unlawful transfers when A-Tac failed to conduct background checks that would have denied the transfer.

## CONCLUSION

The undisputed facts in the administrative record establish numerous willful violations, each of which supports the Director's revocation of A-Tac's federal license. The undisputed facts in the administrative record also establish each of the sales to a convicted felon leading to

the $24,486 civil fine.  Accordingly, A-Tac respectfully requests that the Court enter summary judgment in ATF's favor and affirm the decision below.

Dated:  May 22, 2020                              Respectfully submitted,

                                                     JASON R. DUNN
                                                   United States Attorney

                                                 *s/ Andrea Wang*
                                                 Andrea Wang
                                                 Assistant United States Attorney
                                                 United States Attorney's Office
                                                 1801 California Street, Ste. 1600
                                                 Denver, CO 80202
                                                 Telephone: 303-454-0100
                                                 E-mail: andrea.wang@usdoj.gov

                                                 Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to any party who has entered an appearance in this matter to the address provided in CM/ECF.

RW@bryanslaw.com

*s/ Andrea Wang*
Office of the U.S. Attorney
