IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-02905-RBJ

A-TAC GEAR GUNS UNIFORMS LLC, and
ATAC ARMS,

      Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,
DENVER COLORADO FIELD OFFICE, and
PAUL BROWN, Director,

      Defendants.

---

ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

---

This case involves violations of the Gun Control Act, 18 U.S.C. §§ 921 *et seq.* ("the Act"). Plaintiffs are A-TAC Gear Guns Uniforms, LLC and ATAC Arms (collectively "A-TAC"). A-TAC is a firearms dealer in Aurora, Colorado. Defendant Paul Brown, Director of the Denver Field Division of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (collectively "ATF") revoked A-TAC's license and imposed a fine for hundreds of violations of the Act. A-TAC, through its owner Timothy Taconi, seeks judicial review of the license revocation and fine. Before the Court are plaintiffs' motion for summary judgment [ECF No. 21] and defendants' motion for summary judgment [ECF No. 20]. For the reasons discussed below, plaintiffs' motion is DENIED, and defendants' motion is GRANTED.

## I. FACTUAL BACKGROUND

The parties have provided the Court with an administrative record over eight-hundred and fifty pages long. ECF No. 19. I summarize the relevant undisputed facts as necessary here to address the cross motions for summary judgment. Though the parties were permitted to dispute the administrative record and file motions to complete or supplement the record, neither party did so. ECF No. 17 at 3. They also had the right to request a hearing. ATF chose not to. *Id.* at 4. A-TAC indicated that it would make any request for a hearing by the close of summary judgment briefing. *Id.* It ultimately did not request a hearing. The Court does not deem a hearing or additional discovery necessary in order to resolve the summary judgment issues. I therefore consider only the information provided in the administrative record.

### A. **A-TAC's advisement of the Act's requirements.**

In 2015 A-TAC, by and through its owner Mr. Timothy Taconi, applied to be a federal firearms licensee ("FFL"), also called a licensee or dealer. Mr. Taconi was and has always been the sole "responsible" person for A-TAC.[1] As part of that process ATF investigator Brenda Todd interviewed Mr. Taconi, told him about the regulations that licensees must follow, and gave him a regulation reference book (ATF Publication 5300.44) and a pamphlet on gun show sales. ECF No. 19-23 at 8:19–12:20, . Mr. Taconi was informed about prohibitions on conducting sales outside of Colorado and selling certain types of firearms to out-of-state

---

[1] The ATF defines "responsible person" as follows: "[i]n addition to a Sole Proprietor, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms." ATF Form 7, Application for Federal Firearms License at 6 (revised October 2020), https://www.atf.gov/firearms/docs/form/form-7-7-cr-application-federal-firearms-license-atf-form-531012531016/download.

residents.  *Id.*  Mr. Taconi signed the "Acknowledgement of Federal Firearms Regulations" form, which confirmed that he understood he was responsible for knowing the laws and regulations regarding firearms sales.  ECF No. 19-5.  He also stated at his administrative hearing that he was given the regulation book and pamphlet, and that he had the opportunity to ask questions during the initial interview.  ECF No. 19-23 at 105:7-18.  ATF granted A-TAC a firearms license in March 2015.  ECF No. 19-24 at 3.

In 2018, ATF special agent Jody Keeku received a tip from a confidential informant who was attending a gun show in Wisconsin.  The informant reported that A-TAC was selling firearms there.  The informant said that he was looking at guns on Mr. Taconi's table but told him he might be unable to purchase them because he "had some run-ins" with the law.  According to the informant, Mr. Taconi said he would sell him a firearm as a personal firearm, and that he would not have to fill out paperwork.  ECF No. 19-23 at 16:20–19:1.

Based on that tip and further information from the informant, Agent Keeku attended a gun show in Racine, Wisconsin on September 7, 2018 with three other ATF officials.  *Id.* at 19:20-25.  They approached Mr. Taconi and told him that his selling of firearms to Wisconsin residents was illegal.  *Id.* at 19:25–21:2.  They also gave him a warning letter about selling firearms out-of-state and a pamphlet on guidelines for firearms sales at gun shows.  *Id.* at 20:23–23:9.  *See also* ECF Nos. 19-6; 19-7.  The pamphlet explained that "Federal firearms licensees ("FFLs" or "Dealers") may only sell firearms at gun shows within the State in which their licensed premises is located," and it then provided a list of activities that dealers were permitted or prohibited from doing in states in which they were and were not licensed, and regarding in-state and out-of-state residents.  ECF No. 19-7 at 3.

Mr. Taconi admitted to selling firearms to Wisconsin residents. ECF No. 19-23 at 22:11-14. He also acknowledged receipt of the warning letter with his signature. ECF No. 19-6 at 3. The letter was titled "Warning Notice of Gun Show Operations in Violation of Federal Law," and it advised that willful violations of licensee regulations could result in license revocation. *Id.* at 2. Mr. Taconi asked the ATF employees whether he could sell firearms that day at the Wisconsin gun show, and they responded that he could not. ECF No. 19-23 at 23:10-18.

### B. A-TAC's violations.

On December 18, 2018 ATF investigator Tony Bradley conducted an inspection of A-TAC's place of business (which is also Mr. Taconi's personal residence). *Id.* at 27:2–28:13, 29:24–31:24. The inspection included reviewing A-TAC's "acquisition and disposition" book, conducting an inventory of all firearms, checking 4473 forms, checking records such as sales reports and losses, and asking Mr. Taconi questions about his business and manufacture and sale of firearms. *Id.* at 32:19–35:6. Investigator Bradley uncovered over six hundred individual violations of the Act in sixteen categories by A-TAC. ECF No. 19-8.

ATF focused on five major categories of violations. First, the inspection noted fifty-four violations of 27 C.F.R. § 478.100(a)(1), which prohibits the conduct of business away from the licensed premises. In essence, Investigator Bradley found that A-TAC had sold fifty-six firearms to fifty-four different out-of-state residents through twenty-seven out-of-state gun shows. ECF No. 19-8 at 1–2; *see also* ECF No. 19-23 at 36:16–37:18. Forty of the sales occurred after Mr. Taconi received his warning letter. ECF No. 19-23 at 37:19–38:6.

Second, the inspection reported one hundred and ten violations of 27 § C.F.R.478.102(a), which requires conducting background checks on each customer in the National Instant Criminal

4

Background Check System ("NICS") prior to any firearm transfer. ECF No. 19-8 at 4–5; *see also* ECF No. 19-23 at 44:23–45:14. While many of these transfers were from A-TAC to Mr. Taconi, fifty-six of them involved failure to conduct a background check on other purchasers. *Id.*

Third, the inspection noted forty-three violations of 27 C.F.R. 478.99(a), which prohibits the unlawful sale or delivery of handguns to out-of-state residents.[2] ECF No. 19-8 at 5–6; *see also* ECF No. 19-23 at 58:23–60:2. More than thirty of those transfers occurred after Mr. Taconi's warning letter. *Id.* When Investigator Bradley asked Mr. Taconi about gun show firearm sales to out-of-state residents, Mr. Taconi stated that he attempted to find dealers at the gun shows to assist him in selling lawfully, but that when he was unsuccessful, he transferred the firearms anyway. ECF No. 19-23 at 64:2-19.

The fourth set of violations related to 27 C.F.R. § 478.124(a), which requires licensees to execute and retain an ATF Form 4473 on all firearm transactions. The investigator noted fifty-nine such violations, fifty-six of which involved firearm transfers from A-TAC to Mr. Taconi. ECF No. 19-8 at 6–7; *see also* ECF No. 19-23 at 62:3–63:24. The remaining three transfers, which were to third parties, all occurred after the September 2018 warning letter. *Id.*

Fifth and finally, Investigator Bradley discovered three violations of 27 C.F.R. § 478.99(c), which forbids the sale or delivery of firearms to a prohibited person. On three occasions—two prior to the warning letter, and one after—A-TAC transferred a firearm to a convicted felon, apparently due to a failure to run background checks on the three different

---

[2] Some of these transactions also constituted violations of 27 C.F.R. § 478.100(a)(1) because they involved A-TAC conducting business unlawfully at out-of-state gun shows, and they are thus counted under that category as well. Some of them did not.

purchasers.  ECF No. 19-8 at 3; *see also* ECF No. 19-23 at 50:10–58:19.  The NICS was operational during the time of these sales, so Mr. Taconi could have run the required checks without issue.  *Id.*

In addition to these five categories, Investigator Bradley's inspection revealed other violations, such as failure to submit the Annual Firearms Manufacturing and Exportation Report; failure to timely report theft of firearms; failure to report multiple sales of pistols and revolvers; failure to maintain both licensee and nonlicensee disposition records and acquisition records; failure to obtain maintain4473 forms and ensure their completion and accuracy, including by verifying identification documents and having transferor sign the form; and failure to properly document firearm transfers when conducted at alternate locations.  ECF No. 19-8.

### C. **ATF's administrative action against A-TAC**.

On April 30, 2019, Denver Field Division Director Paul Brown sent Mr. Taconi a notice informing him that ATF was revoking A-TAC's firearms license and imposing a civil fine as a result of the violations it found during Investigator Bradley's December 18, 2018 inspection.  ECF No. 19-2.  ATF relied on the first four categories of violations discussed above as the basis for its license revocation decision.  *Id.* at 6–7.  ATF relied on the fifth category, sale of firearms to prohibited persons (in this case three convicted felons) for the civil fine.  *Id.*

The notice informed Mr. Taconi that he and A-TAC had the right to request a hearing on the proposed licensing action, and it explained what the hearing would entail.  *Id.* at 3–4.  Mr. Taconi timely requested a hearing.  The hearing was conducted on July 8, 2019 before Director Brown.  ECF Nos. 19-3; 19-4.  Both A-TAC and ATF were represented by counsel.  ECF No. 19-23.  At the hearing, Investigator Todd, Agent Keeku, and Investigator Bradley testified on

behalf of ATF and presented evidence of A-TAC's many violations. *Id.*

Mr. Taconi also testified at the hearing. He provided various reasons and excuses for his company's violations. He claimed that he was not sure Agent Keeku was a "real" ATF agent when she approached him at the gun show in Racine, Wisconsin. *Id.* at 106:23–107:13. He said that though he received and looked at the warning letter and pamphlet on September 18, 2018, he did not "read read" them. *Id.* at 108:3-5. He also claimed to have received conflicting information from other ATF agents regarding what he could do at gun shows—for example, he mentioned that one told him he had to ship his products in order to sell them at a show. *Id.* at 87:20–88:12, 97:3-24.

Mr. Taconi did not deny that during his December 2018 inspection he sold firearms to out-of-state residents at gun shows even when he could not find a dealer to go through. Instead, he explained that his wife pressured him to conduct sales this way, and that his wife did not agree with the importance of certain firearms sales requirements. *Id.* at 96:23–97:24, 112:21–116:21. With respect to his failure to perform background checks when he transferred firearms to himself, Mr. Taconi testified, "I don't understand why you do that" and stated that it was "an added expense." *Id.* at 109:24–110:9.

During the hearing Mr. Taconi also mentioned steps he had taken to get into compliance since the December 2018 inspection. He stated that he was "being more harsh" on completion of the 4473 forms by using a new software and by double-checking responses to certain questions. *Id.* at 90:22–93:2. He also said that he was now generating a backup sheet for the Form 4473 for each transfer and giving customers a paper receipt with the transfer information. *Id.* at 93:14–94:6. Mr. Taconi also puts NICS information on the backup sheet. *Id.* at 94:7-20. Finally, he

7

indicated that he was hoping to hire a bookkeeper since at the time he was solely in charge of all A-TAC's operations (buying, manufacturing, books, payroll, etc.). *Id.* at 94:21–97:7.

On August 14, 2019, Director Brown served Mr. Taconi and A-TAC with a final notice of revocation of A-TAC's federal firearms license. ECF No. 19-24. He determined that there was evidence A-TAC had committed willful violations of the Gun Control Act regulations, and that this revocation was warranted. *Id.* at 4–6. He also concluded that, with the exception of the missing Form 4473s, any of the violations alone would have led him to revoke the license. *Id.* at 7. Finally, Director Brown concluded that a civil fine of $24,486.00 should be assessed for the three transfers of firearms to convicted felons. *Id*.

## II. PROCEDURAL BACKGROUND

After receiving the Director's decision, A-TAC filed this lawsuit on October 11, 2019. ECF No. 1. ATF responded on February 25, 2020. ECF Nos. 12, 13. It also provided the Administrative Record to the Court. ECF Nos. 18, 19. Both parties moved for summary judgment—ATF on May 22, 2020, and A-TAC on June 22, 2020. ECF Nos. 20; 21. The parties also filed briefs in response and reply. ECF Nos. 22; 23.

## III. STANDARD OF REVIEW

### A. **Motion for summary judgment.**

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."

*Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. The Gun Control Act.

Under 18 U.S.C. § 923(a), a federal firearms license is required for anyone "engage[d] in the business of importing, manufacturing, or dealing in firearms."  A licensee or dealer must keep accurate and detailed "records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."  *Id.* § 923(g)(1)(A).

"The Attorney General may, after notice and opportunity for hearing, revoke any license issued . . . if the holder of such license has willfully violated any provision of [the Act] or any rule or regulation prescribed by the Attorney General under this chapter . . . ."  18 U.S.C. § 923 (e). Subsection (f)(2) of the licensing provision of the Gun Control Act provides that a party whose license is revoked has a right to a hearing reviewing the decision.  If the Attorney General decides not to reverse his or her decision after the hearing, the party's next recourse is de novo review in a district court:

> If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to . . . revoke a license, the Attorney General shall give notice of his decision to the aggrieved party.  *The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court*

9

> *for the district in which he resides or has his principal place of business for a de novo judicial review of such . . . revocation.* In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2).

18 U.S.C. § 923(f)(3) (emphasis added). The court's inquiry is confined to determining whether the Attorney General (i.e. the agency) "was not authorized to deny the application or to revoke the license . . . ." *Id.* As a result, "[c]ourts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly." *CEW Properties, Inc. v. U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 979 F.3d 1271, 1277 (10th Cir. 2020) (quoting *Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1158 (D.N.M. 2010)).

## IV. ANALYSIS

The Gun Control Act of 1968 was passed partly in response to the assassinations of Dr. Martin Luther King, Jr. and President John F. Kennedy. Today it remains one means of promoting order and safety in the firearms industry. But ATF cannot monitor every single firearms dealer at every moment. The Act's effectiveness thus rests largely on dealers' taking its regulations seriously. With this context in mind, I turn to my review of ATF's decision.

### A. Whether the record supports license revocation.

The issue before the Court is whether ATF was "authorized to . . . revoke the license." 18 U.S.C. § 923(f)(3). Summary judgment on an ATF license revocation is warranted if there is no genuine dispute as to whether the evidence was sufficient to establish that a dealer "willfully violated" its regulatory obligations. *CEW Properties*, 979 F.3d at 1277. "[W]hen the evidence before the agency showed that ATF was authorized to revoke a license and the petitioner has not substantially drawn the material facts developed at the administrative hearing into question, the evidence was sufficient," and summary judgment for the agency is appropriate. *Id.* at 1279.

10

Willfulness under the revocation provision, 18 U.S.C. § 923(e), is met by "plain indifference." *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012). "For a violation to be willful, [the dealer] must have (1) known and (2) been plainly indifferent to its legal obligations." *CEW Properties*, 979 F.3d at 1279 (citing *Borchardt*, 684 F.3d at 1042). Circumstantial evidence is sufficient to establish the requisite state of mind. *Borchardt*, 684 F.3d at 1043. Repeated violations can constitute such circumstantial evidence. "[A]fter a dealer has been informed of the Gun Control Act requirements and warned of violations, a dealer's subsequent repeat violations suffice to show plain indifference to the statutory requirements." *Id.* "The magnitude of the violations—both their quantity and seriousness—can support a finding of willfulness." *CEW Properties*, 979 F.3d at 1280. A single violation can be sufficient. *Id.* (citing *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation authorizes the ATF to revoke the violator's [license], regardless how severe, though the frequency and severity of the violations can be relevant to willfulness.")).

The evidence presented at the Administrative Hearing, and thus before the Court, is not in dispute. A-TAC does not asset that it did not violate ATF's regulations. Instead, it argues that its violations were not willful but instead merely negligent. *See* ECF No. 21 at 5–6. I disagree. There is substantial circumstantial evidence showing that A-TAC was plainly indifferent to the statute's requirements. A-TAC committed literally hundreds of violations of different rules under the Act. The magnitude of the number of violations, and the fact that many were serious (such as failure to run background checks and sale of firearms to out-of-state residents), are enough to suggest willfulness. *CEW Properties*, 979 F.3d at 1280.

Mr. Taconi's proffered excuses for his violations also reveal that they were willful. The

11

uncontroverted evidence shows that A-TAC was advised of its legal obligations under the Act when it applied for and received a license. Despite this, Mr. Taconi failed to keep proper and accurate paperwork, such as 4473 forms. He attributes the failure to execute and retain ATF Form 4473 on "miscommunication among his staff." ECF No. 12 at 3. Specifically, he states that his wife is a Thailand native that does not speak, read, or write English well and does not understand U.S. laws well, and it was she who disposed of the missing 4473 forms. *Id.* This is no excuse. Mr. Taconi was the sole responsible person for A-TAC as a business, and thus for A-TAC's compliance with regulations. His efforts to blame this non-compliance on his wife indicate that he did not see the rules as important enough to follow—certainly enough for "plain indifference."

For instances of Violation 2, related to sales without background checks, Mr. Taconi argues that many of those transactions were sales to himself, and that he was unaware that he had to conduct background checks on himself. ECF No. 12 at 3. While this is true, more than half of the violations (fifty-six of them) involved sales to third parties, not himself. The record shows that he understood the need to conduct background checks and simply did not do them in many instances—while the failure to run his own name through NICS on each self-transfer might be understandable, the failure to check other customers' profiles is not.

As for the failure to conduct background checks that led to three firearms sales to convicted felons, Mr. Taconi blames this partly on the purchasers, who evidently did not state on their forms that they were prohibited from possessing firearms, and partly again on "miscommunication among his staff." *Id.* His failure to run background checks on certain convicted felons is even more concerning. The background check regulation contemplates the

exact situation in which Mr. Taconi finds himself, i.e. individuals lying on their forms in order to illegally possess a gun. It is for this very reason that it makes sense for the dealer to bear the burden of running background checks. Mr. Taconi's attempt to shift responsibility to unlawful purchasers and his staff despite this clear rule demonstrates that he did not take the requirement seriously.

The fact that A-TAC committed so many repeated violations after ATF's warning is also evidence of willfulness. *Borchardt*, 684 F.3d at 1043. ATF agents approached Mr. Taconi at the gun show in Racine, WI and gave him a warning. They provided a written pamphlet about sales to out-of-state individuals and told him verbally how to comply. Though the agents only confronted him about sales to Wisconsin residents, the warning letter mentioned violations generally and put Mr. Taconi on notice that A-TAC needed to be compliant with *all* regulations. Instead, A-TAC continued to unlawfully execute firearm transfers to out-of-state citizens and at out-of-state gun shows, as well as engage in many other categories of violations. Even setting the other categories aside, the unlawful sales to out-of-state residents alone would be enough for this Court to affirm ATF's revocation decision. *CEW Properties*, 979 F.3d at 1280; *Fairmont*, 858 F.3d at 362; ECF No. 19-24 at 7.

Mr. Taconi claimed that the information he received from various agents was conflicting. Yet, he also admitted that he did not "read read" the pamphlet ATF agents gave him that explained the rules in plain English, indicating again that he did not take seriously his obligations as a dealer under the Act. When asked about sales at out-of-state gun shows at the hearing, Mr. Taconi explained that his wife pressured him to conduct sales this way, and that his wife did not agree with the importance of certain firearms sales requirements. This does not support his

13

argument that the violations of the Act were merely negligent. It illustrates instead that Mr. Taconi weighed the risk of non-compliance against the risk of upsetting his wife, and the balance tipped in her favor. In other words, he knew the rules and made the express choice not to follow them. It would be difficult to find clearer evidence of willfulness than this.

A-TAC also states that enforcement of these regulations against A-TAC was selective. Admittedly, it is the Court's impression that Mr. Taconi was not attempting to deceive the government or subvert the law for malicious purposes. Taking his hearing testimony at face value, it appears that he knew he was making mistakes and running afoul of the regulations, but in some instances he did it to avoid strife with his wife, and in others he believed it was simply the way most dealers were operating. Unfortunately, neither of these explanations excuse his violations. A-TAC may find it unfair that its license was revoked while other dealers engaging in similar violations have not faced the same fate. But that is the risk of violating any regulation, and Mr. Taconi is a sophisticated enough businessman to have understood that risk. This supposed unfairness does not render the agency's decision unlawful.

Finally, A-TAC argues that ATF erred in holding its administrative hearing swiftly instead of offering A-TAC a discretionary re-evaluation. ECF No. 12 at 2. The reason for which A-TAC's argument fails is evident in its own articulation—re-evaluation is at the discretion of ATF. This Court does not have the authority to force ATF to provide A-TAC additional opportunities for compliance. My review is limited to whether the record supports ATF's decision to revoke the license. 18 U.S.C. § 923(f)(3). I find that it does.

As a final remark, I note that much of A-TAC's motion urges me to find ATF's decision arbitrary and capricious. It argues that the agency "entirely failed to consider an important part

14

of the problem in this case by refusing, after its investigation, to consider A-TAC's proof of voluntary compliance through A-TAC's application of remedial measures, including the use of dedicated tracking software, before commencing revocation." ECF No. 21 at 5.  The argument misunderstands arbitrary and capricious review and disregards the standard of review authorized by the Gun Control Act.  Arbitrary and capricious review means that the decision of the agency will be upheld unless the court determines that it was arbitrary and capricious.  Application of an arbitrary and capricious standard of review would tend to favor the defendant in this case.  But the Gun Control Act, specifically 18 U.S.C. § 923(f)(3), authorizes the dealer to petition for a de novo review of the revocation decision.  The Court did that and concluded after a de novo review that the revocation was warranted.

### B. Whether the revocation supports the civil fine.

In addition to revoking A-TAC's federal firearms license, ATF imposed a fine of $24,486.00 for the three violations of the background check requirement provision that led to sale of firearms to three convicted felons. ECF No. 19-24 at 1.  As discussed above, the Act requires background checks on all firearms purchasers and prohibits the sale of guns to individuals prohibited from possessing them.  ATF may fine a dealer for violating these rules:

> If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer and, at the time such other person most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that receipt of a firearm by such other person would violate subsection (g) or (n) of this section or State law, the Attorney General may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923, and may impose on the licensee a civil fine of not more than $5,000.

18 U.S.C. § 922(t)(5). In essence, the dealer violates Section 922(t)(5) if he or she fails to

15

conduct a background check on a prospective customer in NICS and then, as a result, sells a firearm to a prohibited person such as a convicted felon. The onus is on the firearms dealer to conduct the background check to ensure the sale does not violate the law, not on the purchaser to accurately report whether he or she is permitted to own a firearm. *Id.*

The statute is explicit that the standard of culpability for a fine under the provision is knowledge, not willfulness. *Id.* ("If the licensee *knowingly* transfers a firearm . . . ."). Though the Tenth Circuit has not addressed the culpability standard for this provision, at least one other circuit has. The Eleventh Circuit reviewed a $5,000 fine imposed on a dealer for failing to conduct a background check and concluded that the "knowingly" standard applied. *Bankston v. Then*, 615 F.3d 1364, 1368 (11th Cir. 2010). A-TAC also appears to concede that this is the correct standard. *See* ECF No. 12 at 3, ¶12 (referencing whether it "knowingly" sold firearms). "Knowingly" is defined as "[i]n such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately." *Black's Law Dictionary* (11th ed. 2019).

A-TAC contends that it did not knowingly sell firearms to three convicted felons because each of the purchasers filled out a Form 4473 and claimed that he was not prohibited from possessing firearms. ECF No. 12 at 3. But as already discussed the burden to perform background checks on prospective purchasers, and thus to prevent the transfer of firearms to prohibited persons, lies with the dealer. If dealers were permitted to rely on the statements of purchasers as to whether they were legally permitted to own firearms, the entire purpose of 18 U.S.C. § 922(t)(5) would be undermined. There is no question Mr. Taconi knew about the background check requirement. He received the regulations reference book in his initial

interview for A-TAC's license in 2015.  His testimony at the hearing also demonstrated that he knew background checks were necessary.   Nonetheless, A-TAC approved the transfers to the three individuals despite their convictions for felonies and the NICS system being operational at the time of the sales.  ECF No. 19-17.  This is sufficient to establish that Mr. Taconi, and therefore A-TAC, knowingly violated the law.

In a different approach to circumventing liability, Mr. Taconi attributes these "three mistakes" to "miscommunication among his staff" which resulted in the failure to perform the three background checks.  ECF No. 12 at 3.  Though the Tenth Circuit has not addressed this issue, the Eleventh Circuit rejected this exact argument in *Bankston*.  It found a dealer liable for the acts of his employees who purportedly had failed to conduct background checks.  *Bankston*, 615 F.3d at 1368.  The court noted that the employee who actually sold the gun was working within the scope of his employment and for the dealer's benefit, and that the dealer was the sole proprietor of the gun shop and thus responsible for his employee's acts.  *Id.* at 1369.

The same analysis applies here.  Mr. Taconi provides no details on the supposed "miscommunication" among staff that occurred in these three instances.  But his own admission that the individuals involved were "staff" indicates that they were working on behalf of Mr. Taconi and thus on A-TAC's benefit.  A-TAC has put nothing in the record to suggest that these staff were *not* acting within the scope of their employment.  Indeed, helping prospective customers complete 4473 forms and conducting background checks are precisely the types of tasks that would fall within the scope of employment at a gun shop.  As the sole proprietor and sole responsible person for A-TAC, Mr. Taconi was responsible for his staff's actions that occurred in the scope of their employment.  *Id.*; *see also Trantham v. Super T. Transp., Inc.*, 311

F. Supp. 3d 1247, 1253 (D. Colo. 2018) (citing *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006) (noting that employer is liable for torts of an employee acting within the scope of employment)). That includes the staff's purported failure to conduct background checks on these three individuals. As a result, even if the omission was not Mr. Taconi's personally, he still knowingly transferred firearms in violation of 18 U.S.C. § 922(t)(5).

Finally, Mr. Taconi points this Court to the various remedial measures he took to improve A-TAC's compliance, such as adopting a new form-filling software and using backup sheets for Form 4473. He also says that he offered to help ATF retrieve the firearms from the three unlawful purchasers. ECF Nos. 12 at 1, 3; 21 at 5. While the Court commends these actions, they are not defenses to the civil fine. There is no provision of the Act that permits a licensee to cure a violation of 18 U.S.C. § 922(t)(5) by recovering firearms or improving procedures for future sales. The Court therefore affirms imposition of a civil fine of $24,486.00 on A-TAC.[3]

## ORDER

The Court GRANTS defendants' motion for summary judgment [ECF No. 20] and DENIES plaintiffs' motion for summary judgment [ECF No. 21]. As the prevailing parties, defendants are awarded their reasonable costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 31st day of March, 2021.

BY THE COURT:

---

[3] The express language of 18 U.S.C. § 922(t)(5) permits a maximum fine of $5,000 per violation. However, the Department of Justice adjusts civil penalties for inflation based on the year the violation occurred. *See* 28 C.F.R. § 85.5 (Adjustments to penalties for violations occurring after November 2, 2015). The $24,486.00 amount appears to represent the maximum inflation-adjusted fine for three violations of 18 U.S. § 922(t)(5), based on the dollar amount for DOJ penalties assessed after August 1, 2016. *Id.*

_____

R. Brooke Jackson
United States District Judge